The plaintiff alleges in his petition that the defendant, Mrs. Josephine Papania, sold him a used mechanical refrigerator for the price of $210; that the ceiling price fixed by the Office of Price Administration on the said refrigerator was the sum of $12, and the overcharge was $198; that he is entitled to collect from the defendant three times said overcharge, or the sum of $594, plus attorneys fees of $200, all in accordance with the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., and the maximum price fixed by the Price Administrator.
The defendant filed exceptions of no cause and no right of action, and alleged in the exceptions that she was not the owner of the refrigerator; that said property was sold to plaintiff by Lucas Papania, and that plaintiff paid for said refrigerator by his personal check, payable to said Lucas Papania; that defendant had no right or title to the property, and no interest therein; that she is improperly joined as defendant in the suit.
The trial court sustained the exceptions of no right and no cause of action and dismissed plaintiff's suit. From this judgment plaintiff has appealed.
While there does not appear in the record any testimony in support of the exception of no right of action, we do find in the record a check dated June 24, 1944, for the sum of $210, signed by the plaintiff and made payable to Lucas Papania. There is also in the record a letter written by one of defendant's attorneys, dated Sept. 1, 1944, to the District Price Executive in New Orleans, explaining the connection that defendant had with the sale of the refrigerator. These documents must have been considered by the trial judge, and as plaintiff's counsel makes no objection to them, we will consider them on the appeal.
It is shown by these documents (and in fact seems to be conceded by the plaintiff) that the refrigerator belonged to defendant's son, Lucas Papania, who was at the time of the sale in the military service. He had requested his mother, the defendant herein, to sell the refrigerator for not less than the amount he had paid for it, the sum of $210. Acting under this request, the defendant sold the refrigerator to plaintiff and received from him the above mentioned check made payable to said Lucas Papania for the sum of $210. Defendant endorsed the check for her son and deposited the money to his credit in the bank.
The plaintiff bases his right of recovery on the provisions of Section 205(e) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925(e), which provides: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum *Page 757 
prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court."
The section was amended by the Stabilization Extension Act, approved June 30, 1944, but as the transaction herein complained of took place prior to the effective date of the amending act, this case must be determined under the original act of 1942, and the orders and regulations issued thereunder. In March, 1943, the Price Administrator issued an order placing a maximum price on used refrigerators sold by a householder as well as those sold by dealers in the regular course of trade, and the maximum price fixed in this regulation for used refrigerators of the type purchased by this plaintiff was $12.
The principal ground on which the exception is based is that the defendant had no interest in the property sold and derived no pecuniary advantage from the sale whatever; that she was only acting as the agent of the owner and carrying out his instructions.
[1] The act of Congress gives to the purchaser of the commodity which is sold to him above the ceiling price a right to collect treble the amount of the excess from the person selling the commodity, plus attorneys fees and costs. Who is the person selling, the one who owns the commodity and receives the money for it, or does it also include the agent who negotiates the sale and collects the money for the owner? Section 302(h) of the Act of 1942 states that the term "person" includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of the foregoing.
The law does not in express terms render an agent liable for the penalty where the agent acts for the owner in making the sale. The expression in defining a person in the above section including the successor or representative of an individual, corporation, partnership, association or other organized group, evidently means the legal successor or representative of these, such as a receiver, liquidator, executor, administrator, guardian or tutor. There is quite a difference in this kind of a representative and that of an agent under a private contract. Where it is intended to hold an agent with his principal it is usual and customary to mention the agent as such.
Clerks and employees in a store are the agents of the owners and in many transactions sell commodities in the absence of their employers in the regular course of business, and it is hardly conceivable that Congress intended to penalize all such agents and employees who might violate a maximum price regulation in selling an article for their employer and out of which they derive no pecuniary benefit whatever. Unquestionably, as to the seller of an article above the maximum ceiling price, the law which gives the purchaser a right to recover treble the excess is a penal statute and should be strictly construed.
In Section 205 (d) of the Act it is provided that "No person shall be held liable for damages or penalties in any Federal, State, or Territorial court, on any grounds for or in respect of anything done or omitted to be done in good faith pursuant to any provision of this Act or any regulation, order, price schedule, requirement, or agreement thereunder." It is not charged in the petition, nor is it contended by plaintiff, that this defendant acted in bad faith, but, on the contrary, it is conceded that she acted in good faith in selling the refrigerator for her son and in accordance with his request.
[2] There is authority for the holding that the person who sells an article above the ceiling price is liable to the purchaser for the penalty, although the seller was innocent in the violation. Bowles v. American Stores, 78 U.S.App.D.C. 238,139 F.2d 377, certiorari denied 64 S.Ct. 947, 322 U.S. 730, 88 L.Ed. 1565. But in a prosecution for the violation of the Act by selling an article above the maximum price, it must be shown that the seller acted knowingly and wilfully. United States v. Renken, D.C.S.C., 55 F. Supp. 1.
[3-5] We mention these rulings not as the basis for our holding in this case, but in order to emphasize the point that, insofar as the statute inflicts on the seller damages in excess of the amount the purchaser actually loses because of the sale above the ceiling price, it is at least to these damages a penal statute and should be strictly construed. This provision cannot be made operative against this defendant unless the statute expressly authorized it, and liability *Page 758 
cannot be established or extended by implication. And since the statute does not expressly cover an agent who sells for the owner, the former must be held not to come under the law, in the absence of some allegation of complicity, conspiracy, or other circumstance showing an intent on his part to circumvent the law on behalf of his principal.
For the reasons assigned, it is ordered that the judgment appealed from which sustained the exception of no right of action and dismissed plaintiff's suit is affirmed at plaintiff's cost in both courts.