BOWLES, Administrator, O.P.A., v. MIL-
NER HOTELS, Inc.

SAME v. 101 E. CHESTNUT STREET, Inc.

Nos. 801, 823.

District Court, W. D. Kentucky,
Louisville Division.

Sept. 21, 1945.

Fritz Krueger and Jos. J. Grace, both of Louisville, Ky., for plaintiff.

R. Lee Blackwell and Bullitt & Middleton, all of Louisville, Ky., for defendants.

MILLER, District Judge.

These two actions, involving associated defendants and similar facts and the same questions of law, were heard together by the Court without a jury by agreement of the parties.

The facts as stipulated by the parties in each case are adopted by the Court.

In the first action the Price Administrator charges the defendant in its operation of the Tyler Hotel in Louisville, Ky., with overceiling charges on 54 different occasions arranging from 50 cents to $1.50, and involving aggregate overcharges of $31.50. In the second case the Price Administrator charges the defendant in its operation of the Milner Hotel in Louisville, Ky., of over-

ceiling charges on 20 occasions involving aggregate overcharges of $13.50. The Administrator seeks damages in the amount of $25 for éach of the 74 separate violations for a total of $1850. The defendants admit the violations and the amounts involved, but contend that in the first case the recovery is limited to $31.50, being the amount of the overcharge, and that in the second case that the recovery is limited to the statutory amount of $25 provided for cases where the overcharges are less than that amount. The stipulation in each case provides that none of the violations committed by the defendant was willful or the result of failure to take practicable precautions against the occurrence of the violation.

▆ Jurisdiction exists by reason of Section 205(c) and (e) of the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944, 50 U.S.C.A.Appendix § 925(c, e). Section 205(e), giving a right of action to a buyer at over-ceiling prices against the seller and dealing with the question of damages, provides in part as follows: "In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the ᴦreater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations."

The only question before the Court in each case is whether the plaintiff can recover from the defendant $25 for each person so overcharged or is limited in each action to the total of the overcharges or $25, whichever is greater.

▆ The defendants rely upon a number of cases which were decided before the Emergency Price Control Act of 1942 was amended on June 30, 1944, by the Stabilization Extension Act of 1944. See McCowan v. Dumont, D.C., 54 F.Supp. 749; Simmons v. Charbonnier, D.C., 56 F.Supp. 512; Everly v. Zepp, D.C., 57 F.Supp. 303; Link v. Kallaos, D.C., 56 F.Supp. 304; Bowles v. American Stores, Inc., 78 U.S.App.D.C. 238, 139 F.2d 377. However, the following cases, also decided before the amendment of 1944, took the opposite view of the question: See Gilbert v. Thierry, D.C., 58 F.Supp. 235; affirmed 1 Cir., 147 F.2d 603; Bowles v. Eitzen,[1] D.C.N.M.; Pringle v. Kofsy. D.C.E.D.Pa., July 13, 1944. In view of the changes made in the wording of the Act by the amendment of June 30, 1944, none of the foregoing decisions appear applicable to the present case. The cases referred to deal for the most part with successive violations on the part of the landlord against the same tenant, such as successive monthly collections of rent under the same lease. Some of the decisions held that such violations were cumulative, while other decisions held that they were not. However, this ambiguity in the original statute was removed by the amendment of 1944. which specifically refers to "the amount of the overcharge, or the overcharges." This amendment by the use of the additional phrase "or the overcharges" adopted, for the purposes of violations occurring thereafter, the view that successive overcharges against the same tenant were not cumulative. See Note 1 in Thierry v. Gilbert, 1 Cir., 147 F.2d 603, at page 605. However, where the successive overcharges by the landlord are against different tenants an entirely different picture is presented. The Act specifically permits each tenant so overcharged to bring an action for damages. In the present cases each of the 74 tenants could bring a separate action and recover

---

[1] No opinion for publication.

$25 apiece. That apparently is conceded by the defendants. The Act also provides that if the buyer (or tenant) fails to institute his action within thirty days "the Administrator may institute such action on behalf of the United States." The action by the Administrator is therefore the same action which the tenant could have brought with the Administrator merely being substituted as plaintiff for the tenant. This construction is further borne out by the provision that when the Administrator brings the action the tenant shall thereafter be barred from bringing an action for the same violation. It is accordingly clear that the Administrator in the facts involved in these cases could have instituted 74 separate actions and recover $25 in each action. I find nothing in the Act which takes from him this right when he elects to join numerous causes of action in one suit instead of bringing separate actions for each violation. The limitation of liability to "the amount of the overcharge or overcharges or $25, whichever is greater," is not against the Administrator's right of recovery in each of these two actions, as urged by the defendants. Its physical location in that section of the Act, dealing with the buyer's right of recovery and before anything is said about the Administrator's right of recovery, makes it clear that it is a limitation on the amount to be recovered by each buyer or tenant who has been overcharged. The Administrator in his action has a separate and cumulative recovery for each tenant overcharged.

 The defendants in support of their construction strongly urge that the construction being given to the Act results in excessive damages for trivial overcharges, and in many cases could be ruinous to defendants who had committed only small violations although numerous in amount. Such a result is possible and could be exceedingly harsh in its effect if the Administrator elected to exact the maximum which the law allowed. Congress no doubt contemplated that the Administrator would act reasonably in such cases, but at the same time wanted to give him enough power to make its enforcement effective. As was said in Bowles v. American Stores, supra [78 U.S.App.D.C. 238, 139 F.2d 379], "Section 205(e) reflects the view that occasional hardship to one who honestly and intelligently endeavors to comply with the law is not too high a price to pay for the protection of the whole community against inflation." Where the statute appears plain and unambiguous in the penalties which it provides, it is not the province of the Court to reduce or modify those penalties even if it disagrees with them. If the enforcement of the Act by the Administrator results in the collection of excessive penalties, it becomes a situation for Congress to consider and correct, if necessary, rather than for corrective action by the Court.

The plaintiff is entitled to judgment in the amount of $25 for each of the 74 violations.