336

[No. 31468. *En Banc.* March 29, 1951.]

M. ALLENE SHUH, *Respondent,* v. HARTNEY A. OAKES, *as Executor, Appellant.*[1]

*Wingate & Suffel,* for appellant.

*James D. Rolfe,* for respondent.

GRADY, J.—The respondent instituted this action to recover treble the amount of excess rental collected from her

[1]Reported in 229 P. (2d) 507.

by appellant in violation of a regulation promulgated by an area rent director. The court entered such a judgment, from which this appeal has been taken.

Respondent rented a one-room apartment through an agent of the owner. There was in effect at that time, a regulation of a governmental agency which fixed the rental for the apartment at $18 per month if it was occupied by one person, and $30 per month if occupied by two persons. When the rental arrangement was made, respondent was informed the amount of the rent would be $30 and that two people must occupy the apartment. Respondent signed a written statement to the effect that the room was being rented to two people and if one left the other would also leave. The respondent occupied the room from about March 10, 1948, to May 10, 1949, and regularly paid $30 per month rental. Shortly after the tenancy commenced the owner died. Appellant, executor of her will, thereafter received the rental. The judgment covers a twelve-month period.

The action was brought pursuant to the housing and rent act of 1947, Title 50, U. S. C. A. Appendix, § 1881; amended 1949, Appendix, § 1895. This act provided that any person (including a legal representative) who demanded, accepted or received any payment of rent in excess of the maximum rent prescribed should be liable to the person making such payment for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in either the sum of fifty dollars, or three times the amount of the rental paid in excess of the maximum which could lawfully be demanded, accepted or received, whichever might be the greater amount. The act provided that the amount of the liquidated damages should be limited to the amount of overcharge if the defendant proved that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation.

The appellant presents several engaging arguments which would have merit if this were an action in which respondent was seeking the aid of a court of equity, but as the action is based upon a Federal statute designed to pro-

tect tenants against the exaction of unreasonable rentals, neither equitable doctrines, such as estoppel and waiver, nor maxims of equity can be applied.

The appellant's agent lived in the apartment house, was the one who made the rental arrangement with respondent, and collected the rent from her. When it became apparent that the rented room was to be occupied by respondent alone, the appellant should have either collected eighteen dollars per month or required respondent to vacate, unless she forthwith had and kept another occupant in the apartment with her. Having permitted the apartment to be occupied by respondent alone, and having received from her twelve dollars per month in excess of that authorized by the rent regulation, appellant became liable under the statute.

The appellant urges that, in any event, he should be held liable only for the overcharge, inasmuch as the violation of the regulation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. By the statute, the burden was cast upon the appellant to bring himself within the exception. The record shows that the agent of appellant knew at all times during the tenancy that respondent occupied the apartment alone. All the agent did was to receive from respondent the signed statement that the room was rented to two people, and if one left the other would leave also. Neither the procurement of this signed statement, nor any of the course of dealing on the part of appellant or his agent, constitutes the "practicable precautions against the occurrence of the violation" contemplated by the statute.

The appellant invokes the rules that the court will not enforce an illegal transaction, and if at any time during the course of litigation illegality is made to appear, the court will leave the parties where it finds them and will not award relief to either of them. These rules usually find expression when an attempt is made to enforce a contract based upon either an illegal consideration or one that is against public policy. They are not applicable to one who

seeks the benefit of a statute enacted for his protection. We have been cited the case of *Schaubach v. Anderson,* 184 Va. 795, 36 S. E. (2d) 539. In that case it appeared that the plaintiff had knowledge of the excess rental paid, and it was argued that the principle of *in pari delicto* should be applied to defeat a recovery. The court rejected the contention made on the theory that there was no provision in the statute either in terms or by fair implication which barred the action on account of such conduct, even though it be conceded that the tenant had knowledge of the overcharge.

Whatever may be said of the conduct of the respondent from an ethical standpoint, the conclusion must be reached that it cannot be branded as of such illegal character as to preclude her from maintaining the statutory action. The act does not forbid the payment of excessive rental, but is an inhibition upon the one who demands, accepts or receives it.

In *Zwang v. A & P Food Stores,* 46 N. Y. S. (2d) 747, 181 Misc. 375, action was brought for damages by reason of the sale by defendant to plaintiff-consumer of food products at a price in excess of the ceiling price prescribed pursuant to the emergency price control act of 1942. It was claimed the plaintiff was a wrongdoer in that when she purchased the food products she knew she was being charged a sum in excess of the ceiling price, but it was decided this was no defense in view of the objectives sought to be attained by the act. We recognized and applied the principle that under a protective statute one may seek the aid of the courts for redress even though he may be a wrongdoer and subject to a criminal penalty in *O'Neil v. Crampton,* 18 Wn. (2d) 579, 140 P. (2d) 308. In that case the plaintiff sought to recover money lost at gambling, and his right to maintain the action was sustained.

The judgment is affirmed.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, HAMLEY, DONWORTH, and FINLEY, JJ., concur.

HILL, J. (dissenting)—I dissent. No question is raised by appellant as to the constitutionality of rent controls in 1948-1949, and we have before us simply a question of whether the facts in the present case bring it within the statute.

If there were any suggestion here that appellant insisted upon single occupancy and charged the double occupancy rate, I would agree that such a subterfuge should not be permitted and that the penalty should apply. There is, however, no question raised as to the good faith of the appellant.

It is my view that appellant, under the situation here existing, charged no excessive rent. He charged only the rate to which he was entitled for double occupancy. That he was entitled to refuse to rent the space for single occupancy and to insist upon double occupancy is conceded. He did all that he could, short of eviction of the tenant, to insure double occupancy.

Respondent knew that the occupancy was supposed to be double and she could at any time have taken in another woman to live with her and share expenses, and thus ameliorate the housing shortage. Whether or not there was to be a violation of rent regulations was at all times at her election. Because respondent chose to follow the ideas expressed in "Live Alone and Like It" is no reason why appellant should be required to subsidize her in the amount of thirty-six dollars a month.

This dissent is prompted by no quixotic desire to joust with the windmills of Federal rent control, but by reason of the feeling that rent controls are here to stay, as emergencies, real or synthetic, will always be found to justify their continuance, and that, therefore, attention should be directed to this situation, which, if the law is as the majority interprets it to be, may suggest the need of some amendment.

BEALS, J., concurs with HILL, J.